## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHELLE DONAHUE**<br>**3860 9th Road South**<br>**Arlington, VA 22204**<br><br>　**Plaintiff,**<br><br>　　　　v.<br><br>**JEH JOHNSON,**<br>**SECRETARY**<br>**U.S. DEPARTMENT OF HOMELAND**<br>**SECURITY/FEMA**<br><br>　**Defendant.** | **Civil Action No.** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff Michelle Donahue, by her undersigned attorney, brings this action for relief and damages based on the denial of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq**.,** and the Rehabilitation Act, 29 USC § 701, to remedy acts of employment discrimination and retaliation perpetrated against her by the United States Department of Homeland Security (DHS).

2.      Plaintiff contends that DHS officials discriminated against her because of her sex (female) and disability (chronic depression), retaliated against her for having complained about discrimination, created a hostile working environment, failed to provide reasonable accommodation, punished her for using medical leave to obtain treatment for work-induced maladies, and constructively terminated her federal service employment.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343, 42 U.S.C. § 2000e-5, 29 U.S.C. § 791, *et seq*.

4. Venue is appropriate in this Court under 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff Michelle Donahue, a female, is a citizen of the United States and a resident of the State of Virginia. At all times relevant to this suit, until her constructive termination on April 23, 2012, she was employed with DHS as a GS-14 Supervisory Exercise Program Specialist in the Federal Emergency Management Agency (FEMA), Policy Branch of the National Exercise Division (NED). Plaintiff resides at: 3860 9th Road South, Arlington, VA 22204.

6. Defendant, Jeh Johnson, is the Secretary of the Department of Homeland Security. The Secretary is being sued in his official capacity as provided by law based on his executive responsibility for administering DHS personnel policies and his responsibility to enforce and to promote equal employment opportunity throughout the Agency. During the relevant time period, DHS employed well-over 500 employees. The Defendant's address is: Secretary of Homeland Security, Washington, D.C. 20528.

7. Keith Holtermann, is not a defendant in this lawsuit but was named in Plaintiff's Equal Employment Opportunity Commission (EEOC) complaint as a discriminating official. Mr. Holterman was Plaintiff's first-line supervisor.

8. Kristin Wyckoff is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official. Ms. Wyckoff was Plaintiff's second-line supervisor.

9. Rebecca Siceloff is not a defendant in this lawsuit but was named in Plaintiff's EEOC complaint as a discriminating official.

## STATEMENT OF FACTS

10. The Plaintiff had a stellar record in the government before she engaged in EEO activity.

11.     During her thirty-one year federal career, the Plaintiff had excellent performance ratings. She never received an unfavorable evaluation from anyone in the Agency.

12.     The Plaintiff had a very good relationship with her first-line supervisor, Dr. Holtermann, prior to engaging in EEO activity.

13.     Their relationship was so positive that, on February 18, 2010, just prior to engaging in EEO activity, Dr. Holtermann recommended that Plaintiff be accepted in a DHS Fellowship Program. In the nomination letter, Dr. Holtermann stated that:

> I have known Ms. Michelle Donohue for the past 2 years. It is without any hesitation or reservation that I support her application for the DHS Fellows Program.
>
> I first met Ms. Donahue when she came to work at FEMA as the Policy Branch Chief in [the] National Exercise Division. Her work in the field of Exercise Policy is quite professional and extremely competent. I have called upon Ms. Donahue to help me with various critical technical endeavors, and I am continually impressed by both her depth and breadth of knowledge and her can-do attitude. She has generously served as a resource for all her subordinates and peers. She is consistently working to get her message out for the need to further professionalize the exercise domain. Ms. Donahue practices what she preaches and always conducts herself as an example professional, representing the very best of what FEMA should expect in their leaders.
>
> She apparently has an insatiable desire to learn, and to apply what she learns for the benefit of others. She also has a proven track record of education and performance, and this opportunity would provide her with a wider array of perspectives.
>
> As her supervisor, I support her candidacy for this program.

14.     One week later, on February 25, 2010, the Plaintiff told Dr. Holtermann that a contract employee had sexually harassed one of her subordinates. She told him that she removed the contractor from the contract after she verified the allegations. Dr. Holtermann, who was on vacation during this time, was not pleased when he learned about this development.

15.     Six weeks after learning about the sexual harassment allegations, Dr. Holtermann opened an investigation on the Plaintiff into potential wrongdoing; he denied her pre-approved travel; he took away her job duties; and he changed the conditions of her employment.

16.     On July 1, 2010, after completing the informal stage of the EEO process, the Plaintiff filed a

formal EEOC complaint (HS-10-FEMA-152) alleging discrimination and hostile work environment based on her gender and reprisal. The Plaintiff subsequently amended her complaint to add additional claims. In her complaint, she alleged that:

a. The Agency discriminated against her based on her sex and prior EEO activity when they took away her subordinate staff; gave her unfavorable job assignments; met with her subordinates without informing her; criticized her performance; scrutinized her work; refused to talk to her; took away her authority to sign travel authorizations; took money out of her contract without informing her in advance; denied her participation in three conferences; promoted a less qualified male to a GS-15 position; refused to allow her to continue to act as a supervisor.

b. On April 11, 2010, the Agency refused to authorize a travel day because the Agency required her to report to the office to discuss an administrative inquiry, of which she was the subject.

c. In June of 2010, the Agency removed all of her supervisory duties although the effective date shown on her latest SF-50 effecting her reassignment to a non-supervisory position was August 15, 2010.

d. In June of 2010, the Agency provided her with a "less than expected" quarterly review with no prior counseling and no quarterly review forth second quarter of FY 2010 soon after she filed her formal complaint.

e. On June 21, 2010, she was notified by the Agency that after the realignment of the NED, she would serve as the Remedial Action Management Program Doctrine Unit Manager for NED, even though this position had not been approved by Human Capital.

f. On or about June 22, 2010, her name did not appear on the certificate of eligibles for vacancy announcements AN343426 (Support Branch Chief) and AN340617 (Planning Branch) within her division. The Agency took steps to prevent her from appearing on the lists.

g. On July 19, 2010, the Agency discussed a Letter of Reprimand with her without prior counseling. In addition, on a number of occasions, the Agency reprimanded her publicly and privately in response to management decisions that she made independently.

h. On July 30, 2010, she received a graded and approved position description that she used to move ahead with her work plan. She was later informed that it was a mistake, which precluded her from having a work plan for her quarterly performance review.

4

i. On September 10, 2010, the Agency placed her under the supervision of an employee that she formerly supervised.

j. On September 16, 2010, she received another position description that had not been classified or approved by Human Capital, and was told to have a work plan developed to discuss by September 20, 2010.

k. She received a new position with distinctly different roles and responsibilities, for which she was provided an unofficial Position Description that had not been graded nor approved by Human Capital.

l. On September 20, 2010, she received a new organizational chart from her prior Management Official, who also informed her it had been approved by upper management. When she asked for an electronic copy of the chart, the Branch Chief told her there were still some issues so that it could not yet be published.

m. She did not receive award money for FY 10, although a former employee of hers did.

n. She received her 4th quarter review with three less than expected marks and a FY 10 annual evaluation with one unsatisfactory mark in the critical performance area of "completing tasks."

o. On September 20, 2010, she was excluded from a Division Management meeting although she had more experience and seniority than any of the other managers. This action was verified in writing and she was told she would no longer be included in Division Managers' meetings.

p. On October 27, 2010, she received an unacceptable annual evaluation. It was the same one she received on October 6, 2010; however, the overall performance evaluation had been changed from "acceptable" to "unacceptable" and signed by her Management Official

q. On November 9, 2010, her responsibility for devolution planning was removed, although she had spent significant time on this project, to include attending three days of classroom training.

r. She sent multiple emails to her Supervisor and your Branch Chief requesting reconsideration of her travel request without any response from her Supervisor. Her Branch Chief responded by agreeing with her Supervisor and her Director, refusing to respond to her request to intercede concerning her travel issue.

  s. On November 9, 2010, her travel authorization for two weeks of training was returned to her denied through the automated Federal Travel system by the Agency. She was given permission by the NED Director on August 6, 2010, to take this training scheduled for December 7-17, 2010.

17. On March 16, 2011, the Plaintiff filed a second EEO Complaint (HS-11-FEMA-59) alleging that she was discriminated against when:

  a. On October 27, 2010, she received an unacceptable annual review for FY 2010.

  b. On November 29, 2010, she received a very condescending letter from her supervisor restricting to whom she could communicate and about what she could communicate.

  c. On November 29, 2010, she received a very condescending letter from her Branch Chief when she requested a face-to-face meeting with her to discuss concerns that she had about her supervisor.

  d. On December 10, 2010, she was denied a training opportunity.

  e. On December 10, 2010, her request for FMLA was denied.

  f. On December 14, 2010, she was charged as AWOL when she was at a doctor's appointment and provided a doctor's note.

  g. On December 14 thru 15, 2010, her annual leave request was denied.

  h. On December 16, 2010, she was placed on leave restriction.

  i. She was not paid until December 20, 2010, because the Agency rejected her pay validation.

  j. On January 5, 2011, she was made aware that she was placed on a Performance Improvement Plan (PJP) that was effective December 9, 2010, and was told that she had already missed two deadlines.

  k. On January 5, 2011, she received a letter of proposed suspension.

  l. On January 6, 2011, she was accused of altering a medical form.

  m. On January 6, 2011, December 22, 2010, and December 4, 2010, she was denied

6

leave under the Family Medical Leave Act (FMLA).

n.  On January 21, 2011, she received two memorandums for the record regarding her conduct, dated October 6, 2010 and November 30, 2010, with no prior discussion or counseling.

o.  She was never provided with measureable goals other than unrealistic deadlines without constructive feedback.

p.  She was denied administrative leave to prepare for a meeting with a mediator in regard to her participation in the Alternative Dispute Resolution process.

q.  On January 31, 2011, she was given an "unsatisfactory" rating on her first quarter fiscal year 2011 appraisal.

r.  On February 3, 2011, her request to telework was denied.

s.  On February 11, 2011, she was denied the opportunity to attend a professional meeting on Risk Analysis.

t.  On February 22 thru 28, 2011, she was placed on a 5-day suspension.

u.  She was not informed of the status of her request for reasonable accommodation due to your disability

v.  She did not receive any follow up to a desk audit she requested several months before.

w.  She was denied the opportunity to attend several working groups that were directly related to one of her tasks on her annual work plan.

x.  On March 3, 2011, she was issued a memorandum to withhold her within-grade step increase which was awarded to her on January 17, 2011.

y.  On March 4, 2011, the Agency did not grant her training requests.

z.  On March 15, 2011, she was wrongfully charged for two periods of Absent Without Official Leave (AWOL) for February 28, 2011, when she was serving the fifth day of a suspension and on March 11, 2011, when she was activated to work in the National Response Coordination Center.

aa. On March 14, 2011 and on March 17, 2011, she was denied compensatory/travel time for travel that occurred with a valid travel authorization while she was attending a conference out of town.

bb. She received her 2nd quarter review for FYI 1 with three less than expected marks.

cc. On April 21, 2011, she was retaliated against when the Agency did not provide he with current feedback that she had requested in regards to a project.

dd. The Agency did not give her feedback on a continuous basis; and, did not state expectations.

ee. In the National Level Exercise conducted May 16-19, 2011, she was the only employee in the Division who was not given a supervisory or director's role.

ff. She was constructively terminated from her job.

18. Agency EEO Complaints HS-10-FEMA-152 and HS-11-FEMA-59 were consolidated by the EEOC into EEOC No. 570-2011-00312X.

## EXHAUSTION OF REMEDIES

19. Plaintiff exhausted all administrative requirements that apply to the processing of her complaints, including the filing of complaints with the Agency's EEO office.

## STATEMENT OF CLAIMS

COUNT I: Sex Discrimination in Violation of Title VII

20. Plaintiff adopts and incorporates by reference paragraphs 1-19 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her sex when the Agency treated her less favorably than male employees.

21. Plaintiff adopts and incorporates by reference paragraphs 1-20 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her sex when the Agency subjected her to a hostile work environment.

22.     As a result of the Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical ailments such as heart problems, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

COUNT II: Hostile work environment

23.     Plaintiff adopts and incorporates by reference paragraphs 1-22 above.  Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her sex when it subjected her to a continuous pattern of harassment.

24.     Plaintiff adopts and incorporates by reference paragraphs 1-23 above.  Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to a pattern of retaliatory harassment after she engaged in protected EEO activity and requested reasonable accommodation.

25.     As a result of the Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical ailments such as heart problems, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

COUNT III: Disability Discrimination

26.     Plaintiff adopts and incorporates by reference paragraphs 1-25 above.  Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to discrimination on the basis of her disability when it denied her reasonable accommodation.

27. Plaintiff adopts and incorporates by reference paragraphs 1-26 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, subjected her to a pattern of disparate treatment based on her disability.

28. As a result of the Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical ailments such as heart problems, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorneys' fees, the costs of this litigation, and accrued interest.

COUNT IV: Retaliation

29. Plaintiff adopts and incorporates by reference paragraphs 1-28 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, treated her differently from other employees after she raised EEO allegations on February 25, 2010.

30. Plaintiff adopts and incorporates by reference paragraphs 1-29 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, treated her differently from other employees after she initiated an informal EEO complaint and participated in the EEO process.

31. Plaintiff adopts and incorporates by reference paragraphs 1-20 above. Plaintiff alleges that Defendant, and/or agents or employees acting on its behalf, treated her differently from other employees after she informed the Agency that she was disabled and requested reasonable accommodation.

32. As a result of the Defendant's unlawful and discriminatory practices, Plaintiff has suffered and is suffering considerable injury, including loss of present and future earnings, loss of employment opportunities and career advancement and mental distress, embarrassment, humiliation, physical injury, and indignity. As a consequence of Defendant's actions, Defendant is additionally liable to Plaintiff for those damages as well as for attorney fees, the costs of this litigation, and accrued interest.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests this Court to:

A.	Enter judgment for Plaintiff against Defendant;

B.	Declare that the conduct of Defendant is in violation of Title VII and the Rehabilitation Act;

C.	Order the Agency to reinstate her and award back pay;

D.	Award Plaintiff back pay and performance awards equal to those of similarly situated employees.

E.	Award Plaintiff compensatory damages for the injuries and losses that she suffered in an amount to be proven at trial;

F.	Order Defendant to pay all reasonable attorney fees, court costs, and expenses incurred by Plaintiff as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment interest;

G.	Order the Agency to expunge her record of negative personnel information; and

H.	Order such other equitable and legal relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff requests a trial by a jury of her peers as to the claim set forth in this Complaint.

Michelle Donahue
By Counsel

Respectfully submitted,

*s/a Rosemary Dettling*	December 15, 2016
Rosemary Dettling, Esq.	Date
DC Bar No. 441483
Federal Employee Legal Services Center
1629 K Street, NW, Suite 300
Washington, DC 20006
Tel. 202-390-4741
Fax. 202-379-9772
rdettling@felsc.com
*Counsel for Plaintiff*

11